**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|   |   |
|---|---|
| THE COLONY INSURANCE GROUP, : | |
| : | Civ. No. 08-716 (GEB) |
| Plaintiff, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | |
| ELECTRIC FORK LIFT REPAIR, : | |
| INC., et al., : | |
| : | |
| Defendants. : | |

RECEIVED
APR 0 3 2009
AT 8:30
WILLIAM T. WALSH
CLERK

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of plaintiff The Colony Insurance Group ("Plaintiff" or "Colony") for default judgment against defendants Electric Fork Lift Repair, Inc. ("EFLR"), RTB Fabricators, Tempo Technologies Corp., and Tri-State Compounding, Inc. [Docket No. 32]. For the foregoing reasons, Plaintiff's motion is granted in part and denied in part.

**I.    BACKGROUND**

Defendant EFLR is a New Jersey Corporation who leased property located at 1000 Somerset Street, New Brunswick, NJ 08901 (the "Property") from the corporation New Brunswick Industries ("NBI") for the period of February 1, 1997 through January 31, 2002. (Pl.'s Stmt. of Facts, ¶ 1 [Docket No.32]). Plaintiff, an insurance company with its principal place of business in Richmond, Virginia, subsequently issued an insurance policy numbered GL123509 to EFLR on the Property for the period September 1, 2002 to September 1, 2003 (the "Initial Policy"). (*Id.* at ¶ 2; Am. Compl., ¶ 3; Initial Policy, attached as Exh. A to Aff. of

Carolyn Ford (Ford Aff.) [Docket No. 32]). The Initial Policy was renewed twice for the periods September 1, 2003 to September 1, 2004 (the "First Renewal") and September 1, 2004 to September 1, 2005 (the "Second Renewal," together with the First Renewal, the "Renewals," and together with the Initial Policy and the First Renewal, the "Policies"), respectively, and was cancelled April 1, 2005. (Pl.'s Stmt. of Facts, ¶¶ 2-3; Ford Aff., ¶¶ 6-7; First Renewal and Second Renewal, attached as Exhs. B and C to Ford Aff.).

### A. The Insurance Policy

#### 1. The Initial Policy

The Initial Policy is, according to Plaintiff, an "occurrence" policy, applying only to bodily injury and property damage that occurs during the policy period. (Pl.'s Stmt. of Facts, ¶ 17 (citing Initial Policy, at Commercial General Liability Coverage Form CG 00 01 10 96, § I.1.b(2)). The Initial Policy also includes a "Pre-existing Injury or Damage" Endorsement, which provides in part:

> This insurance does not apply to any sums that the insured becomes legally obligated to pay as damages and the Company shall have no duty to defend any claim or "suit" against the insured seeking damages because of "property damage"
>
> > 1. which first occurred prior to the inception date of this policy, or
> >
> > 2. which is, or is alleged to be, in the process of occurring as of the inception date of this policy,
>
> whether such "property damage" is known or unknown by any insured.
>
> This exclusion applies regardless of whether an "property damage" continues or progressively deteriorates during the duration of this policy.

(Pl.'s Stmt. of Facts, ¶ 18 (citing Initial Policy at Endorsement U073)).

The Initial Policy further contains a "Hazardous Materials Exclusion" Endorsement, which contains the "Total Pollution Exclusion Endorsement":

> This insurance does not apply to:
>
>> A. "Bodily Injury", "Property Damage", "Advertising Injury" or "Personal Injury" which would not have occurred in whole or in part but for actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>>
>> B. Any loss, cost or expense arising out of any:
>>
>>> 1. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
>>>
>>> 2. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Pl.'s Stmt. of Facts, ¶ 18 (citing Initial Policy at Endorsement U003)).

### 2. The Renewals

Plaintiff asserts that, like the Initial Policy, the Renewals are also "occurrence" policies, again applying only to bodily injury and property damage that occur during their coverage periods. (Pl.'s Stmt. of Facts, ¶ 20 (citing Commercial General Liability Coverage CG 00 01 10 01, § I.1.b(2)). The Renewals provide that Colony:

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Colony] will have the right and duty to defend the

3

> insured against any "suit" seeking those damages. However, [Colony] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Pl.'s Stmt. of Facts, ¶ 21 (citing First Renewal and Second Renewal, Commercial General Liability Coverage Form § I.1.a)). Each of the Renewals also contains an identical "Hazardous Materials Exclusion Endorsement," stating that the Renewals do not provide coverage for:

> (1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.
>
> (2) Any loss, cost or expense arising out of any:
>
>> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or
>>
>> (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials".
>
> (3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".
>
> \* \* \*
>
> This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location

(Pl.'s Stmt. of Facts, ¶ 22 (citing First Renewal and Second Renewal, Hazardous Materials Exclusion Endorsement U003). Further, the Renewals define "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Pl.'s

4

Stmt. of Facts, ¶ 23, (citing Renewals § V.15)). Finally, Section B of the Hazardous Materials Exclusion Endorsement of both Renewals defines "Hazardous Materials" "means 'pollutants', lead, asbestos, silica and materials containing them.'" (Pl.'s Stmt. of Facts, ¶ 24 (citing First Renewal and Second Renewal, Hazardous Materials Exclusion Endorsement U003)).

### B. The State Court Action

On or about November 22, 2006, the Housing Authority of the City of New Brunswick (the "Housing Authority") brought suit against NBI captioned *The Housing Authority of the Cirty of New Brunswick v. New Brunswick Industries, Inc. v. RTB Fabricators, Inc. et al.*, No. L-9315-06, in the Superior Court of New Jersey - Law Division - Middlesex County (the "State Court Action"). (Pl.'s Stmt. of Facts, ¶ 4; State Court Complaint, attached as Exh. A to Third Party Complaint, attached as Exh. 3 to Pl's Stmt. of Facts). According to the complaint (the "State Court Complaint"), the Housing Authority acquired the Property from NBI by eminent domain and began remediation of environmental contamination caused by hazardous substances located at the Property. (*Id.* at ¶ 5). The Housing Authority seeks contribution and indemnity for the costs of remediating alleged environmental contamination at the Property pursuant to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, et seq. (the "Spill Act") and the theory of unjust enrichment. (Pl.'s Stmt. of Facts, ¶ 6).

#### 1. The Third Party Complaint

On or about June 26, 2007, NBI filed a Third Party Complaint against the EFLR and several companies, including the other Defendants in this action ("Third Party Defendants"), who operated certain industrial manufacturing businesses on the Property. (*Id.* at ¶ 7, Third Party Compl., attached as Exh. 3 to Pl.'s Stmt. of Facts). In the Third Party Complaint, NBI asserted

5

claims against the Third Party Defendants pursuant to the Spill Act and the theories of negligence, strict liability, contribution, indemnification, and breach of contract and sought contribution from the Third Party Defendants for costs related to the remediation of the Property. (Pl.'s Stmt. of Facts, ¶¶ 7-16, Third Party Compl.) On or about August 21, 2007, EFLR filed a notice of claim with Plaintiff, citing the Initial Policy as a basis for the claim. (Am. Compl. ¶ 25). In response Plaintiff issues a reservation of rights letter to EFLR, reserving its rights to deny coverage and/or a defense and indemnification under the Initial Policy and applicable law, citing the exclusions discussed above. (Am. Compl. ¶ 26).

### C.    Procedural History

Plaintiff filed the complaint in this action February 11, 2008 as well as an Amended Complaint on June 5, 2008. [Docket Nos. 1 and 3]. Through the Amended Complaint, Plaintiff sought declaratory judgment against EFLR, the Housing Authority, NBI and the fifteen industrial manufacturing companies named as Third Party Defendants in the Third Party Complaint (collectively, the "Original Defendants"), including the other Defendants in the instant matter. (Am. Compl., ¶¶ 3-21). Plaintiff sought a determination that it does not owe its insured, EFLR, a defense, indemnity, or coverage under the Policies. (*See* Am. Compl., Counts I and II). The Amended Complaint does not explicitly seek any relief against any of the other Original Defendants, but asserts that the Original Defendants that are also Third Party Defendants named in the Third Party Complaint have, according to the filings in that matter, either incurred costs to remediate hazardous substances on the Property or allegedly owe contribution and indemnity for hazardous substances at the Property, and therefore have an interest in the instant action. (Am. Compl., ¶ 15).

6

On September 9, 2008 the Summons and Amended Complaint were served on EFLR. (Aff. of Service for EFLR [Docket No. 11]). NBI was served with the Summons and Amended Complaint on August 29, 2008. (Aff. of Service for NBI [Docket No. 8]). Plaintiff also received waivers of service from twelve of the Original Defendants. (*See* Waiver of Service for Advance Tire Inc. [Docket No. 13]; Waivers of Service for Talley Metals Technology, Inc. as successor to Amcan Specialty Steels, Inc.; Hood Finishing Products, Inc.; The Housing Authority; Jersey Pre-Cast Corporation; M.S. International, Inc.; NBI;[1] Phillips Concrete Company; Phoenix Tube Company, Inc.; RTB Fabricators; Tempo Technologies Corp.; and Tri-State Compounding, Inc. [Docket Nos. 14-24, respectively]).[2]

The only Original Defendant to file an Answer to the Amended Complaint was NBI, who did so on August 29, 2008. [Docket No. 7]. However, from September 8, 2008 through October 27, 2008, Plaintiff entered into Stipulations and Orders with six of the Original Defendants, in which Plaintiff agreed to dismiss the Amended Complaint as against that particular Original Defendant with prejudice in exchange for that Original Defendant's agreement to waive any interest in the Policies, including any present or future claim that the Policies afford EFLR coverage for claims arising from the Property that are subject to the instant action and abide by the Court's judgment with respect to this matter. (*See* Stip. & Orders dismissing The Housing Authority, Advance Tire, Inc., MS International, Inc., Jersey Precast Corp., Phillips Concrete,

---

[1] The Court notes that Plaintiff both served as well as procured a waiver of service from NBI. [*See* Docket Nos. 8 and 19].

[2] It appears from the docket that Original Defendants Irvington Steel and Iron Works, Lyons Associates, Inc., Rolfe Building Materials Company, MCD Distributions, Inc., RBS, and Commerce Capital Corporation have not been served nor have they waived service. However, Plaintiff does not seek default judgment against these parties at this time.

Phoenix Tube Company, [Docket Nos. 10, 12 and 25-28, respectively]).

On November 10, 2008, Plaintiff filed a request for default against EFLR, Amcan Specialty Steels, Inc., Hood Finishing Products, Inc., RTB Fabricators, Tempo Technologies Corp., and Tri-State Compounding, Inc., and the Clerk entered default against these parties on November 11, 2008. [Docket No. 14]. Also on November 10, 2008, Plaintiff filed the following motions: (1) a motion for summary judgment against NBI; (2) a motion for default judgment against EFLR, Amcan Specialty Steels, Inc., Hood Finishing Products, Inc., RTB Fabricators, Tempo Technologies Corp., and Tri-State Compounding, Inc., and (3) a motion to amend the caption of this matter to include the party "Talley Metals Technologies, Inc., as successor to Amcan Specialty Steels, Inc." [Docket Nos. 31, 32 and 30, respectively]. Subsequently, Plaintiff entered into Stipulations and Orders that were identical in substance to the ones previously referenced with Talley Metals Technologies, Inc. as Successor to Amcan Specialty Steels, Inc., Hood Finishing Products, and NBI. (*See* Stip. & Orders dismissing Talley Metals Technologies, Inc. as Successor to Amcan Specialty Steels, Inc., Hood Finishing Products, and NBI [Docket Nos. 33, 34, 36 respectively]). As such, Plaintiff submitted a letter on December 5, 2008, withdrawing its motion for summary judgment and motion to amend the caption as moot. (Letter [Docket No. 37]).[3]

Thus, Plaintiff's only motion currently pending is its motion for default judgment. Further, that motion is currently pending against the following entities: RTB Fabricators, Tempo Technologies Corp., and Tri-State Compounding, Inc. (collectively, the "Non Responding

---

[3]The Court recognizes that before Plaintiff's letter was entered, Magistrate Judge Hughes entered an order granting Plaintiff's motion to amend the caption. [Docket No. 35].

8

Defendants") and EFLR. [Docket No. 32]. None of the Non Responding Defendants have filed a response; however EFLR filed its response on January 5, 2009 [Docket No. 40] and Plaintiff filed its reply on January 14, 2009 [Docket No. 41].

## II. DISCUSSION

### A. The Non Responding Defendants

#### 1. Standard of Review

Default is governed by Federal Rule of Civil Procedure 55. Fed. R. Civ. P. 55. Rule 55(a) provides, in relevant part, as follows: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Thereafter, the plaintiff may seek the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2)." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citation omitted). "The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." *Super 8 Motels, Inc. v. Kumar*, No. 06-5231, 2008 U.S. Dist. LEXIS 28066 at *7 (D.N.J. April 1, 2008) (citation omitted).

Before entering default judgment, the court "must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady*, 250 F.R.D. at 177 (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987) ("we have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment")). "In

9

weighing these factors, district courts must remain mindful that, like dismissal with prejudice, default is a sanction of last resort." *Id.*. (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir.1984)).

Further, although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. *Signs by Tomorrow - USA, Inc. v. Engel Co., Inc.*, No. 05-4353, 2006 US Dist Lexis 56456, at *5-6 (D.N.J. Aug. 1, 2006) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Directv, Inc. v. Asher*, No. 03-1969, 2006 U.S. Dist. LEXIS 14027, at *1 (D.N.J. Mar. 14, 2006) (citation omitted)).

"Consequently, before granting a default judgment, the Court must first ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Signs*, 2006 U.S. Dist. LEXIS 56456, at * 6, quoting *Directv, Inc.*, 2006 U.S. Dist. LEXIS 14027, at *1 (D.N.J. Mar. 14, 2006) (citation omitted).

Pursuant to Federal Rule of Civil Procedure 12, usually a Defendant must answer or otherwise respond "within 20 days after being served with the summons and complaint." FED. R. CIV. P. 12.

2. **Application**

Although Plaintiff has named the Non Responding Defendants as defendants in the Amended Complaint, Plaintiff does not set forth any allegations regarding these entities. Instead, Plaintiff simply reiterates NBI's claims against the Non Responding Defendants as alleged in the Third Party Complaint. (*See* Am. Compl. ¶¶ 13-24). Further, Plaintiff does not seek any relief against the Non Responding Defendants. Rather, Plaintiff seeks declaratory judgment against

10

*EFLR only*, requesting that the Court enter judgment that Plaintiff has no duty to provide that entity with a defense, indemnity or coverage under the Initial Policy and Renewals for the claims set forth in the Third-Party Complaint. (*Id.* at ¶¶ 40, 44 (emphasis added)). Plaintiff does not seek entry of a similar judgment, or any judgment at all, against the Non Responding Defendants.

In discussing when a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) should be granted, the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), noted that "Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In the instant case, the Amended Complaint does not include sufficient information to give the Non Responding Defendants fair notice of the claims against them and the grounds upon which they rest. *Id.* As such, Plaintiff's motion for default with respect to Non Responding Defendants is denied without prejudice.

    **B.**    **EFLR**

        **1.**    **Standard of Review**

Federal Rules of Civil Procedure Rule 55(c) provides that "[f]or good cause shown the court may set aside an entry of default . . . ." Fed. R. Civ. P. 55(c). "A decision to set aside an entry of default pursuant to Fed. R. Civ. P. 55(c) 'is left primarily to the discretion of the district court.'" *Bailey v. United Airlines*, 279 F.3d 194, 204 (3d Cir. 2002) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). The Third Circuit Court of Appeals "has often emphasized that it does not favor defaults, and that in a close case doubts should be resolved in

favor of setting aside the default and obtaining a decision on the merits." *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).

"[I]t is well established that a district court ruling on a motion to set aside a default under Rule 55(c) . . . must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985) (citations omitted).

### 2. EFLR Has Not Put Forth Sufficient Evidence to Warrant Setting Aside the Default that has been Entered Against It.

In its opposition, EFLR does not explicitly address the three factors the Court must consider in determining whether it is appropriate to set aside default judgment. Instead, EFLR argues it was under the belief that the Policies were "claims made" policies, not "occurrence" policies as Plaintiff asserts, and so covers claims that are reported during the policy period, regardless of when such claims occurred. (EFLR's Opp. at 3). As such, EFLR states that it may have a claim against both Plaintiff and their insurance agent, Schecter Lifson, for potentially misrepresenting the nature of the Initial Policy and Renewals and argues that it should be given the opportunity to pursue this potential claim pursuant to the entire controversy doctrine. *Id.*

EFLR also argues that the claims against EFLR in the Third Party Complaint would be covered by the Policies because the allegations contained therein and in the State Court Action refer to a period of time up to and including the middle of 2005. *Id.* Further, EFLR asserts that Plaintiff has indicated that it would provide defense and indemnification to EFLR for the claims set forth in the Third Party Complaint. (EFLR's Opp. at 4). As support, EFLR cites a letter sent from Plaintiff to EFLR dated September 4, 2008 (the "Letter"). *Id.* at 4.; *see also* Letter, attached

12

as Exh. 1 to Certif. of Mavi Pretto [Docket No. 39]). In the Letter, Plaintiff asserts that EFLR's account is "seriously past due" and that EFLR owes Plaintiff a deductible of $2,500 with respect to the "8/24/2007 liability claim . . . filed against . . . [EFLR's] insurance policy with a date of loss of 9/1/2002 for claimant(s) THE HOUSING AUTHORITY OF THE CITY OF NEW BRUNSWICK," on which Plaintiff had already paid $7,077.93. (Letter (emphasis in original)). EFLR argues that because Plaintiff clearly acted in a manner to create the impression and perception that coverage was available and a defense was being provided, they should not now be allowed to disclaim coverage. (EFLR's Opp. at 5).[4]

Finally, EFLR notes that it has denied any discharge of contaminants or pollutants as is alleged in the Third Party Complaint and argues therefore that at this juncture, the most equitable course of action would be to deny Plaintiff's motion, allow EFLR to file an answer in the instant matter (including a third party claim against Schecter Lifson if necessary) and compel Plaintiff to continue its defense of the defendants in the State Court Action while this action is pending.

These arguments do not provide a sufficient basis on which to set aside the default that has been entered against EFLR. As such, Plaintiff's motion for default judgment with respect to EFLR is granted.

### a. Plaintiff Will Be Prejudiced and EFLR Fails to Offer an Excuse for Its Delay

Plaintiff argues that it has been providing EFLR with a defense, under a reservation of

---

[4]EFLR addresses the fact that the Letter indicates that the date of loss of September 1, 2002, which is the date on which the Initial Policy began (and so arguably indicates that the loss was due to a pre-existing injury and would not have been covered under the Initial Policy) by stating that despite this fact this date of loss has not been alleged in the State Court Action or Third Party Complaint. (EFLR's Opp. at 5).

rights, to the Third Party Complaint and that with each day of delay, it suffers prejudice by having to incur costs in defending or attempting to settle the State Court Action. (Pl.'s Rep. at 4-5). Plaintiff further argues that, in its response, EFLR has failed to put forth any reasons for its default that would warrant setting it aside.

The Court agrees that Plaintiff would be prejudiced if default was set aside and further concludes that EFLR has failed to put forth an excuse for its delay in responding to Plaintiff's allegations. In this case, default was entered five months after the filing of the Amended Complaint and approximately two months after service. (Am. Compl., Certif. of Service for EFLR [Docket Nos. 3, 11]). Thus, Plaintiff gave EFLR ample time to respond to or file a motion to dismiss the Amended Complaint before filing the instant motion. Further, during a December 19, 2008 teleconference, EFLR requested an extension to file its response to the instant motion, which the Court granted. (Audio tape: Teleconference (Dec. 19, 2008) (on file with Clerk of this Court)). Throughout this period, Plaintiff has spent time and resources in providing a defense to EFLR in the State Court Action. (Pl.'s Mot. at 4; EFLR's Opp. at 4-5). In light of the foregoing, Plaintiff will suffer prejudice if default against EFLR was set aside at this stage.

Further, as Plaintiff correctly asserts, EFLR has not submitted any justification for its failure to respond to the Amended Complaint. As such, the Court concludes that EFLR has not offered an excuse for its delay.

### b. EFLR Has Not Put Forth a Meritorious Defense

EFLR also does not appear to have a meritorious defense against Plaintiff's claims. As Plaintiff notes, the "Total Pollution Exclusion Endorsement" found in the Policies exclude from coverage (1) any property damage which occurred because of the actual or alleged release or

14

pollutants; (2) any request or demand that EFLR test or clean up the effects of such pollutants or (3) any claim or suit by or on behalf of a governmental authority for damages due to testing or the clean up of such pollutants. (Initial Policy at Endorsement U003). The Renewals further provide that the insurance does not apply to "[a]ny obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to 'hazardous materials.'" (First Renewal and Second Renewal, Hazardous Materials Exclusion Endorsement U003).

As Plaintiff notes, under New Jersey law, such "absolute pollution exclusions" have held to be clear and unambiguous and should be interpreted according their plain meaning to exclude coverage for pollution. (Pl.'s Br. at 20 (citing *Kimber v. Pertroleum Corp. v. Travelers Indem. Co.*, 298 N.J. Super. 286 (N.J. Super. Ct. App. Div. 1997)). EFLR has not put forth any evidence or case law indicating that these exclusions provisions should not be applied to their claim for potential liability relating to the Third Party Complaint.

Plaintiff further asserts that coverage for EFLR's liability in the State Court Action is precluded by the "Pre-existing Injury or Damage" Endorsement of the Initial Policy, which provides that the insurance does not apply to any sums that EFLR becomes legally obligated to pay and does not require Plaintiff to defend any suit against EFLR seeking damages because of "'property damage' which is or is alleged to be in the process of occurring at the inception of the policy." (Initial Policy at Endorsement U073). Plaintiff argues that this exclusion applies because EFLR's operations at the Property ceased by January 31, 2002, a full seven months prior to the start of the Initial Policy and therefore any damages caused by EFLR's release of hazardous substances necessarily would have been "in the process of occurring at the inception of the

15

policy." (Pl.'s Mot. at 24 (citing Initial Policy at Endorsement U073; Lease Agreement between EFLR and NBI, dated Feb. 1, 1997, attached as Exh. A to Aff. of Jerry M. Clark, attached as Exh. 1 to Pl.'s Stmt. of Facts)).

As noted above, EFLR argues that the claims against it in the Third Party Complaint would be covered by the Initial Policy and Renewals because the allegations contained therein and in the State Court Action refer to a period of time up to and including the middle of 2005. *Id.* However, a review of the State Court Action Complaint and the Third Party Complaint reveals that the only references to events taking place in 2005 relate to the City of New Brunswick's taking and subsequent environmental testing of the Property, not any actions attributable to EFLR. (*See* State Court Action Compl.¶¶ 5-13 , Third Party Compl. ¶¶ 2, 25-27). Further, EFLR asserts that it was under the belief that the Initial Policy and the Renewals were "claims made" policies, not "occurrence" policies, and so presumably argue that they that the "Pre-existing Injury or Damage" exclusion does not apply since EFLR did not tender its claim until August 24, 2007. (EFLR's Opp. at 3 (citing ("Letter")). However, as Plaintiff notes and EFLR does not dispute, EFLR did not tender its claim until August 24, 2007, which is more than two years after the Policies ended on April 1, 2005. (Pl.'s Rep. at 7; Pl.'s Stmt. of Facts, ¶¶ 2-3; Ford Aff., ¶¶ 6-7). Further, as Plaintiff also notes, even if the Policies were "claims made" policies, EFLR has not demonstrated why the "Total Pollution Exclusion Endorsement" would not nevertheless preclude coverage for liability incurred pursuant to the State Court Action. (Pl.'s Rep. at 7).

Finally, EFLR also asserts that, as indicated in the Letter, Plaintiff has represented to EFLR that it would provide defense and indemnification to EFLR for the claims set forth in the Third Party Complaint and that because Plaintiff clearly acted in a manner to create the

16

impression and perception that coverage was available and a defense was being provided, they should not be allowed to disclaim coverage at this stage. (EFLR's Opp. at 4-5). However, Plaintiff asserts, and EFLR does not dispute, that on October 29, 2007 Plaintiff issued a reservation of rights letter to EFLR in which it reserved its rights to deny cover and/or a defense and indemnification under the Policies. (Am. Compl., ¶ 27). As such, EFLR had clear notice that Plaintiff may, at a later stage, deny coverage for EFLR's claim filed with respect to the Third Party Complaint.

### III.   CONCLUSION

For these reasons, Plaintiff's motion for default judgment against defendants EFLR and the Non Responding Defendants [Docket No. 32] is granted in part and denied in part. . An appropriate form of order is filed herewith.

Dated: April 3, 2009

*[signature]*

_____
GARRETT E. BROWN, JR., U.S.D.J.